# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## OTTERBACK v. BOHRER.

### March 19th, 1891.

1. PERPETUITIES—*Rule.*—The creation of a trust does not violate the rule against perpetuities, when it must end within life or lives in being, and twenty-one years and ten months thereafter.

2. IDEM— *Wills— Construction— Case at bar.*—Testator wills that part of his estate devised in trust shall not be divided "*until the youngest child of all my said children*" shall be twenty-one years old, and in same clause directs " *and when the youngest child now, and which shall hereafter be born, of all of my said children, shall have reached, or if living would have reached, the age of twenty-one years*," &c. Testator refers to his youngest. *grand*-child.

Appeal from decree of circuit court of Fairfax county, rendered November 26th, 1889, in the cause wherein Henry B. and others are complainants, and George A. Bohrer and others are defendants. The decree being adverse to the complainants, they obtained an appeal to this court. Opinion states. the case.

*W. Willoughby, E. Burks, H. E. Davis* and *R. W. Moore,* for the appellants.

*Rutherford & Page,* for the appellees.

LACY, J , delivered the opinion of the court.

The bill was filed in this cause on the 21st day of January, 1889, by the appellants against the appellees, the plaintiffs and the defendants being the children and grandchildren of Philip Otterback, Sr., deceased. The suit, friendly in character, was brought to have a construction of the will of the said Philip Otterback, deceased, and for other stated purposes. In construing the said will, the circuit court rendered a decree on the said 26th day of November, 1889, by which the part of the said will known as the ninth clause was given a construction which was not acceptable to the plaintiffs, who appealed, in which appeal the defendants have united. But counsel appear here for the infant defendants, and insist upon an affirmance of the said decree as plainly right. The ninth clause is as follows:

"Ninth. I give, devise, and bequeath to my friend, Levi Burke, of Fairfax county, in the State of Virginia, his heirs and assigns, after the death or marriage of my wife, which-ever may happen first, all my estate in said Fairfax county, Virginia, called Belvoir, more commonly known as the White House estate, with all its appurtenances and fisheries, to be held by him and them upon the implicit trusts following, and for no other purpose, *until the youngest child of all my said children* shall have attained the age of twenty-one years; that is to say, the said trustee, for the time being, is hereby empowered to rent out the said estate and fisheries in such manner as he may deem best, or otherwise to manage the said estate to the best advantage; to receive the rents, issues, income, and profits thereof; to cut down and remove the doted and de-cayed wood, and none other, except such as shall be necessary for the use of the said estate; to pay all taxes and other expenses in the care, preservation, and management of the said estate; and, after reserving to himself a commission not exceeding six per cent. on the said rents, income, issues, and profits, for his trouble and responsibility, he shall apply the residue, in the first place, in his discretion, for the education

of each and every of my grandchildren, now born, and which may be born, until they shall respectively attain—the girls the age of sixteen years, and the boys the age of twenty-one years; and if there shall be any surplus remain, the same shall be invested in some safe stock, bearing interest, to accumulate during the said trust. And when the *youngest child now and which shall hereafter be born, of all my said children,* shall have reached, or if living, would have reached, the age of twenty-one years, I direct that the said trustee and his assigns shall sell the said estate and fisheries, with all the appurtenances, at public vendue, and receive the proceeds and divide the same, together with the stocks and accumulations aforesaid, among such of my children as may then be living, and the descendants of those who may have died (they taking a parent's part). And for the purpose of keeping the said trust in active existence, I hereby empower the said Levi Burke, by will or deed, to appoint and create a new trustee, or new trustees, to execute the same; and, in default thereof, I desire the court having chancery jurisdiction in said county, on the application of any of the parties interested therein, to appoint a trustee, or trustees, to execute the said trusts."

Philip Òtterback, the testator, died in 1858, leaving a very large estate, situated in Virginia and in the District of Columbia, there being three large tracts of land in Virginia. The widow died in 1885, not having remarried. There are grandchildren now living under twenty-one years of age, the youngest being eight years of age. At the date of the will, in 1854, and at the time of the testator's death, there were four children under twenty-one years of age. All the residue of the estate, except that mentioned and devised under the ninth clause, was to be sold at the death of the widow.

The circuit court, in the decree rendered on the 26th day of November, 1889, and appealed from here, provided "that the tract of land known as Belvoir, or White House, is and shall remain subject to the trusts established and expressed in and

by the ninth clause of the will and testament of Philip Otter-
back, deceased, until the youngest grandchild of the said tes-
tator, now or hereafter to be born, shall reach, or, if living,
would have reached, the age of twenty-one years; and, should
it at any time be made to appear that it will be for the best in-
terests of those concerned under the will of Philip Otterback,
deceased, that the Belvoir estate should be sold, an application
looking to that end will be entertained."

The first error assigned here is that the court erred in its de-
cree aforesaid in holding that the Belvoir estate, devised to a
trustee in the ninth clause, should remain subject to the said
trusts until the youngest *grandchild* of the said testator, now
or hereafter to be born, shall reach, or, if living, would have
reached, the age of twenty-one years; whereas, by the said
ninth clause, the said trusts attached to the said estate only
until the *youngest child* should become of age, &c. Upon this
question we have only to look to the terms of the will itself to
discover the intent of the testator, and if that be clear, and be
in violation of no rule of law, then we must follow that inten-
tion.

The language of the will is, "until the youngest child of all
of my said children shall have attained the age of twenty-one
years." And again : " And when the youngest child now and
which shall hereafter be born of all my said children" shall
attain twenty-one years, &c.; and, finally, the ninth clause
provides that as to the distribution the proceeds shall be divi-
ded "among such of my children as may then be living, and
the descendants of such as may have died."

What does the testator mean by the " youngest child of my
said children ? " What is a " child of a child," as to the testa-
tor ? When he speaks of the distribution of the proceeds of
this estate he speaks of children, and he calls them children.

When he speaks of a " child of all of my children," does he
mean the same thing, or does he mean what the words imply?
What is a " child of a child ? " When a father speaks of the

youngest child of his child, or the youngest child of all of his
children, he can mean nothing else but his grandchild. What
does "grandchild" mean? Webster says "grandchild" means
a son's or daughter's child. If he wished to speak of his
youngest child, would not he say "my youngest child?" If
he did, would there be the slightest ambiguity in such an ex-
pression? The expression, "the youngest of all my children,"
would mean his youngest child; but the expression, "the
youngest child of all my said children," means obviously his
youngest grandchild. This is the plain significance of the
words used. But when the whole will is considered, and we
bear in mind that his large and valuable estate had been divi-
ded out among his children, and that the main—indeed, only—
object of the ninth clause was to provide for the education of
his grandchildren, as is clearly expressed, and that this prop-
erty so set apart in the ninth clause was but a small part of
his estate, I think it is free from doubt that the reference is to
his grandchildren.

But it is farther urged that this provision, so construed to
apply to grandchildren, is obnoxious to the rule of law against
perpetuities. In this we do not concur. The testator was evi-
dently not *inops consilii*. This is evident from the artistic struc-
ture of the instrument, and counsel's name appended to the will
is not unknown to the profession. The will, especially this
clause, is in its structure clear and finished. The testator has
not gone farther than the law allowed in his limitations, but
during the lives in being, and the utmost period of gestation,
and twenty-one years thereafter. This estate must vest within
this period. There can be no child born to any of his chil-
dren who would not fulfil the conditions within the prescribed
period. This is allowed by the law, and is in violation of no
rule thereof, and so it is good. The argument that the prop-
erty must waste in all this time is of no force in the considera-
tion of this question. The courts may be invoked to conserve
all the interests involved, and the circuit court in this case has

not decided against any application to that end, but has, indeed, as we have seen, expressly reserved to the parties the right to apply for such relief whenever required.

We are of opinion that there is no error in the decree appealed from, and the same must be affirmed.

Lewis, P., dissented.

Decree affirmed.