Edwin A. JOSEPH, II, Plaintiff,

v.

Thora Brout POLLAK, Defendant.

Civ. A. No. 91–131–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

June 4, 1992.

Ben A. Williams, III, L. Wallace Sink, Patten, Wornom & Watkins, Newport News, Va., for plaintiff.

Timothy M. Broas, Gordon A. Coffee, Anderson, Hibey & Blair, Washington, D.C., for defendant.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter came before the court on April 21, 1992, for declaratory judgment. At issue was the interpretation of the provisions of a declaration of trust and a supplemental declaration of trust. A trial was held on that date and a partial judgment was issued from the bench. Additionally, the parties were directed to file post-trial memoranda on several legal issues that arose during trial and that remained undecided. Both parties timely filed their memoranda. Accordingly, the court herein addresses and decides the outstanding legal issues raised at trial and in the legal memoranda.

## I. Factual and Procedural Background

In 1969 the Hampton Redevelopment and Housing Authority (hereinafter "HRHA") conveyed more than seven (7) acres of land to Albert T. Brout, father of Defendant, Thora Brout Pollak. In 1970, the HRHA conveyed more than ten (10) acres of land to Mr. Brout. These parcels of land are known as Old Towne I and II, respectively, and were sold to Mr. Brout for the development of low-income apartments under a program sponsored by the U.S. Federal Housing Authority.

Plaintiff claims that he initially located the properties in question and approached Mr. Brout with the idea of building low-income housing. Mr. Brout financed the project, and the deeds to the property were placed in his name only and were duly recorded.

Plaintiff also claims to have had an understanding with Mr. Brout that he would receive some interest in the land and in the development thereof, but that Mr. Brout would keep the deed in his name during the construction phase so that he could fully benefit from the appropriate tax deductions. According to Plaintiff, he and Mr. Brout agreed that, after construction was complete, Mr. Brout would execute a declaration of trust evidencing Plaintiff's 10% interest in the property. Plaintiff also claims that he and Mr. Brout orally agreed that Plaintiff's Management Company, Great Atlantic Management Company (hereinafter "Great Atlantic"), would be given the contract to manage the properties.

On October 1, 1970, after construction was completed on Old Towne I, Mr. Brout executed a Declaration of Trust, which was never recorded, wherein he held title to Old Towne I "in trust for the benefit of" himself, Plaintiff and the Trustees for the Sarah Brout Trust,[1] in the proportions of 65%, 10%, and 25%, respectively. Additionally, Mr. Brout promised to execute a supplemental declaration of trust, setting forth the respective interests of the parties involved, upon the completion of Old Towne II.

The parties agreed in the Declaration of Trust that: (a) Profits and losses would be shared according to the ratio of interest in the properties; (b) No party would offer any part of the property for sale without the consent of the others, and that if an offer was received for all or any part of the property, the decision of the majority interest would be controlling and binding on all parties; (c) No party would sell or assign his interest in the property without giving a right of first refusal to the other parties for 45 days; and (d) The agreement was binding on all the parties, "their respective heirs, personal representatives, successors and assigns." (Decl. of Trust ¶¶ 3–5 & 7). Mr. Brout further covenanted that he would, upon demand, provide an accounting for his use and disposition of the properties and to render an annual accounting for any receipts and disbursements made in connection with the properties. (Decl. of Trust ¶ 6).[2]

---

1. Sarah Brout was Albert Brout's wife.

2. The text of the declaration of trust provides in pertinent part:

> 1. Albert T. Brout, party of the first part, does hereby declare that although said property known as Old Towne ... and duly recorded in the Clerk's Office of the Circuit Court of the City of Hampton, Virginia, in Deed Book 419, page 116, and as now improved by the erection of apartments thereon, ... he, as of the date of this declaration holds title thereto in trust for the benefit of each of the parties hereto in the following proportions:

| | |
|---|---|
| Albert T. Brout | 65% |
| Edwin A. Joseph, II | 10% |
| Trustees of Sarah Brout Trust | 25% |

2. Albert T. Brout, party of the first part, does hereby declare that the said property known as Old Towne Section II was conveyed to him by deed from the Hampton Redevelopment and Housing Authority, ... and duly recorded in the Clerk's Office of the Circuit Court of the City of Hampton, Virginia, in Deed Book 430, page 57, and he is now in process of construction of apartments thereon. He will, upon completion of said construction ... said date to be fixed and evidenced by a supplement or addendum to this declaration of trust, hold title thereto in trust and for the benefit of each of the parties hereto in the following proportions:

| | |
|---|---|
| Albert T. Brout | 65% |
| Edwin A. Joseph, II | 10% |
| Trustee of Thora Dee Brout Trust | 25% |

On October 1, 1971, after construction was completed on Old Towne II, and as he promised in the October, 1970, Declaration of Trust, Mr. Brout executed a Supplemental Declaration of Trust wherein Mr. Brout declared that Old Towne II was "held in trust by him for the benefit of" himself, Plaintiff, and the Thora Dee Brout Trust in the proportions of 65%, 10% and 25%, respectively. The Supplemental Declaration of Trust also ratified and confirmed the October, 1970, Declaration of Trust, except as modified by the Supplement.

Mr. Brout died in January, 1984. His 65% interest in each of the properties passed to the Thora B. Pollak Limited Trust, pursuant to the instructions of his wife, the executrix of his estate. Upon the death of Sarah Brout, Thora Pollak, the Defendant in this case, obtained the 25% percent interest from the Sarah Brout Trust in Old Towne I. At the age of thirty (30), Defendant, pursuant to the terms of the trust, received the 25% interest in Old Towne II held by the Thora Dee Brout Trust. Thus, between the interest held by her trust and her outright ownership interest, Defendant effectively owned a 90% beneficial interest in both apartment complexes. In 1990, Defendant purchased the 65% interest in each property held by the Thora B. Pollak Limited Trust, thereby giving Defendant a 90% direct beneficial interest in the two properties.

Starting in 1969, Mr. Brout entered into management contracts with Great Atlantic Agency, the corporate predecessor of the current Great Atlantic,[3] to manage Old Towne I and II. Mr. Brout later entered such agreements with Great Atlantic on January 1, 1979, and January 1, 1983. The 1979 contracts provided for a two-year term, the 1983 agreements for a three-year term with automatic renewal unless either party gave 30 days advance notice of termination. The 1983 agreements were signed by Albert T. Brout t/a Old Towne I Apartments and Albert T. Brout t/a Old Towne II and by Plaintiff as owner of Great Atlantic.

Plaintiff and Defendant had several conflicts between 1988 and 1991 regarding Great Atlantic as managing agent. Defendant notified Plaintiff on June 10, 1991, that she was not renewing the management contract, which was to expire on December 31, 1991.

Plaintiff, claiming to be a co-tenant in common with Defendant, brought this suit in state court in September, 1991, for a declaratory judgment as to the form of his ownership interest in Old Towne I and II and as to his management rights in those same properties. Defendant removed the case to federal court on September 24, 1991, pursuant to the court's diversity jurisdiction.

At trial, this court ruled that the language in the Declaration and Supplemental Declaration of Trust clearly manifested Albert Brout's intention to create an express trust.[4] As such, the court declared that

---

3. It is agreed by and between the parties that said property has been acquired for investment and the said parties shall share the profit and loss that may be derived therefrom in accordance with their ratio of interest therein and above recited.

4. It is agreed by and between the parties that none shall offer the property or any portion thereof for sale without the consent of all of the parties hereto. In the event an offer is received for all or any part of said property, then the decision of the majority in interest shall be controlling and shall bind all of the parties hereto.

5. Each of the parties hereto covenants and agrees that he will not sell or assign his respective interest in the said property without having first given refusal to match a bona fide offer for a period of forty-five (45) days to the remaining parties in interest.

6. The party of the first part covenants and agrees upon demand to account to the said parties of the second, third and fourth parts for his use and disposition of the said property and in any event to render annual accounting for any receipts and disbursements made in connection therewith.

7. This agreement shall be binding and shall inure to the benefit of the respective parties hereto and their respective heirs, personal representatives, successors and assigns.

3. Great Atlantic, in both incarnations, was and is still wholly owned by Plaintiff.

4. The court found the language "[H]e ... holds title thereto in trust for the benefit of each of the parties hereto ..." to be dispositive of this point.

Mr. Joseph holds a 10% beneficial interest in the trust property, and Mrs. Pollak holds a 90% beneficial interest in the trust property. The court found that these two trust beneficiaries hold equitable title to the property, but that legal title remains with the trustee. Accordingly, the court further found that the trustee, as legal owner, is the legal entity to make the management decisions for the property.

However, the court's ruling from the bench necessarily raised further issues: (1) whether the trust is valid since it contains no limitation on its duration, and more specifically, whether the trust violates the Rule Against Perpetuities; and (2) who is to become the new trustee since Mr. Brout, the original trustee, has died. The court directed the parties to brief these issues, so that the court could render a final decision in this matter.[5] The parties having done so, the issues are ripe for decision.

### II. Legal Analysis
### A. Rule Against Perpetuities

■ The trust created by Mr. Brout in the Declaration and Supplemental Declaration of Trust does not violate the Rule Against Perpetuities. Normally, in Virginia, the Rule requires that interests in property vest, if at all, within a life or lives in being plus twenty-one (21) years and ten (10) months. *E.g., Ryland Group, Inc. v. Wills,* 229 Va. 459, 463, 331 S.E.2d 399, 402 (1985). The Rule is concerned only with contingent and executory property interests. In this case, however, the trust instruments did not create any contingent or executory property rights; the beneficial property interests in question vested in every beneficiary upon execution of the Declaration and Supplemental Declaration of Trust.[6]

Plaintiff argues that because the trust contains no termination date, and therefore could endure beyond the perpetuities period, it violates the Rule Against Perpetuities. The Virginia Supreme Court does not appear to have ruled directly on the issue of whether a trust in which all the interests have vested within the time period allotted by the Rule Against Perpetuities, but which does not contain a termination date for the trust, violates the Rule Against Perpetuities or any other rule or doctrine that would render the trust invalid or illegal.[7] Nonetheless, it has upheld a trust that could have endured beyond the perpetuities period, and in which, by its own ruling, all property interests would vest, if at all, within the time period allotted by the

5. In a letter to counsel dated April 23, 1992, the court specifically asked counsel to address the following issues:

1. Although under Virginia law a trust does not fail for lack of a trustee alone, if a trustee of a valid trust dies, to whom, if anyone, does the trusteeship pass when the trust instrument is silent on the point? May the position of trustee pass to the trustee's sole heir? What action, if any, can or must the court take in such a situation?
2. Do the trust instruments violate the Rule against Perpetuities? If so, what action, if any, can or must the court take under Virginia law?
3. If the trust is invalid under Virginia law, what action(s) may this court, pursuant to its jurisdiction, take?

6. Although neither party raises the issue, it might be argued that ¶ 7 of the Declaration of Trust, which states that the "agreement shall be binding and shall inure to the benefit of the respective parties hereto and their respective heirs, personal representatives, successors and assigns," might cause the trust to violate the Rule Against Perpetuities.

Although the court does not read this clause to create property interests that could violate the Rule, even if the clause were to create such interests, it nonetheless does not violate the Rule because all the created interests would vest within the time period allowed by the Rule. The interests of all the beneficiaries of the trust remain vested, and the "interests," of any heir, personal representative, successor or assign would also vest within a life in being plus twenty-one years and ten months. For example, the "interest" of an heir would vest upon the death of the beneficiary, and, therefore, necessarily within the period of a life in being plus twenty-one years and ten months. Likewise, the interest of any personal representative, successor or assign would necessarily have to vest no later than the death of the original beneficiary from whom the personal representative, successor or assign received the property.

7. In fact, as far as this court can ascertain, the Virginia Supreme Court has not addressed the issue of trusts of unlimited duration in *any* context.

Rule Against Perpetuities. *See Hagemann v. National Bank & Trust Co.*, 218 Va. 333, 237 S.E.2d 388 (1977). In *Hagemann*, the trust in question, however, was not of *unlimited* duration.

Plaintiff cites the case of *Otterback v. Bohrer*, 87 Va. 548, 12 S.E. 1013 (1891), to support his argument. However, Plaintiff's reliance on this case is misplaced. The court in *Otterback* merely held that the property interests in the trust must and did vest within the perpetuities period. *Id.* at 552–53, 12 S.E. at 1014. In fact, although the court never addressed this issue, a reading of the case makes it clear that the trust in question in *Otterback* might well have endured for longer than the perpetuities period.[8]

■ Plaintiff also argues that the following language in Va.Code § 55–13.2 limits a trust's duration to the period allowed under the Rule Against Perpetuities:

> For the purpose of determining whether the terms of an "inter vivos" trust provide for a duration in excess of that allowed under the rule against perpetuities, the determination of "lives in being" shall be made as of the death of the settlor, if the settlor has at his death the unrestricted right, acting alone, to revoke the trust or to have transferred to himself the entire legal and beneficial interest in all property, both principal and income, held in trust....

Va.Code Ann. § 55–13.2 (Michie 1986). This court does not agree. The purpose of this statute, as is evidenced by its title, "Determination of 'lives in being' for purpose of Rule Against Perpetuities," is to provide for the period of time at which a determination of "lives in being" is to be made, whether it be at the death of the settlor or at the time a settlor surrenders the sole, unrestricted right to revoke the trust and to have transferred to himself the whole legal and beneficial interest in all

property. Although the statute does use the term "duration," this term is never defined or clarified. It could mean duration of the trust, or, it could mean the duration before vesting of a contingent interest. In any case, in the absence of any guidance from the Virginia courts, this court cannot read the statute to *require* that a trust's duration be limited to perpetuities period.

Moreover, on the basis of court cases in numerous jurisdictions, commentators agree that "if all the interests under a trust vest within the period of the rule against perpetuities, the fact that the trust may continue beyond the period does not invalidate it." 1A A. Scott & W. Fratcher, *The Law of Trusts*, § 62.10(2) at 329 (4th Ed.1987) (citing cases from, *inter alia*, Alabama, Connecticut, Georgia, Massachusetts, North Carolina and Pennsylvania). *See also*, G.G. & G.T. Bogert, *The Law of Trusts and Trustees*, § 218 at 304 (2d Ed. Rev.1979) (citing cases, *inter alia*, from Connecticut, Maryland, Massachusetts, New York, North Carolina, and Tennessee and West Virginia). Indeed, such a view makes logical sense:

> If it is approached from the point of view of a restraint on the alienation of property, and the well known view of the courts that it is greatly in the public interest that property shall be freely transferable, it would appear that the question would be of easy solution, since the interests of all beneficiaries are by hypothesis vested in ownership and can be sold or given away whenever their owners desire to do so.

G.G. & G.T. Bogert, *The Law of Trusts and Trustees*, § 218 at 300 (2d Ed.Rev. 1979). Accordingly, this court FINDS that the trust created by the Declaration and Supplemental Declaration of Trust does not violate the "classic" Rule Against Perpetuities.

---

**8.** In his will, the settlor in *Otterback* established a trust in which the residue therefrom was to be used for the education of his grandchildren, the girls up to age sixteen (16) and the boys up to age twenty-one (21). Clearly, not all grandchildren would necessarily attain the applicable age within twenty-one years and ten months of the settlor's death (i.e., within twenty-one years and ten months of the beginning of the trust). Thus, the trust, which the court held did not violate the Rule Against Perpetuities, could potentially have endured for longer than the perpetuities period.

■ However, even though this court has ruled that the trust in this case does not violate the Rule Against Perpetuities, the question remains whether a trust of unlimited duration results in undue fettering of the underlying estate. *See id.* ("It would seem that the only possible objection to a long-term trust with all interest vested would be that it is socially undesirable to permit static conditions of property ownership for a long period"); 1A A. Scott & W. Fratcher, *The Law of Trusts,* § 62.10(2) at 331 (4th Ed.1987) ("The question remains, however, whether the creation of a trust that is to continue beyond the period violates some other rule against the fettering of property for too long a time"). In this case, the court FINDS that, despite the lack of a termination date, this trust does not unduly fetter the property in question.

Nothing in the trust instruments indicates that the trust was meant to last in perpetuity. The trustee is not required to preserve the trust corpus, nor is he prohibited from selling the corpus. Furthermore, the Declaration of Trust makes it clear that sale of all or part of the property was contemplated. In ¶ 4 of the Declaration of Trust, the property could be offered for sale with the consent of all parties, or, if an offer was received, the majority partner, who, at the time the Declaration was executed as well as today, is also the trustee, could unilaterally decide to sell. Paragraph 6 of the Declaration of Trust also contemplates the alienation of the trust property, for it requires that the trustee account to the beneficiaries "for his use and *disposition* of the said property" (emphasis added).

Furthermore, the failure to include a termination date in this trust does not unduly fetter the trust property because the trust is destructible:

> If a trust is destructible, there is no danger of a legal or practical restraint on alienability, or of an undesirable, long-continued and static condition as to ownership; in securing destruction the prop-

erty is freed from the trust and is made transferable and given a nontrust status. G.G. & G.T. Bogert, *The Law of Trusts and Trustees,* § 218 at 308 (2d Ed.Rev. 1979). *See also* 1A A. Scott & W. Fratcher, *The Law of Trusts,* § 62.10(2) at 331–32 (4th Ed.1987) ("In upholding these trusts, the courts have frequently pointed out that there was no undue fettering since the beneficiaries could at any time terminate the trust, and hence it might not continue beyond the period").

Under Virginia law, the trust in this case is destructible, that is, terminable. In Virginia, if all the beneficiaries of a trust "'concur in a demand for delivery in kind of trust assets,'" and the settlor has not expressed an intention that the trust should not be terminated by the demand of the beneficiaries, "'the trustees are obligated to make such a delivery and thereby terminate the trust.'" *Schmucker v. Walker,* 226 Va. 582, 585, 311 S.E.2d 108, 109–10 (1984) (quoting *Telephones, Inc. v. LaPrade,* 206 Va. 388, 397, 143 S.E.2d 853, 859 (1965)). Mr. Brout did not forbid termination or destruction of the trust by its beneficiaries and nothing in the language of the trust documents nor anything in the record reveals any objection to termination of the trust by demand of the beneficiaries. In fact, ¶¶ 4 and 6 contemplate the destruction of the underlying property.[9] Accordingly, the failure to include a termination date for this particular trust does not unduly fetter the underlying trust property. Since the trust in this case neither violates the Rule Against Perpetuities nor unduly fetters the underlying property, the court FINDS the trust as a whole to be valid.[10]

**B. The Right of First Refusal**

■ Although the trust as a whole is valid and does not violate the Rule Against Perpetuities, Defendant argues that ¶ 5 of the Declaration of Trust, which provides that each party agrees not to sell his respective interest in the property without first giving to the other parties the right of refusal to match a bona fide offer for a period of forty-five (45) days, violates the

**9.** *See supra* at 12.

**10.** *But see infra* at 13–17.

Rule Against Perpetuities, and therefore should be stricken from the trust agreement. The court agrees and FINDS that the right of first refusal found in ¶ 5 of the Declaration of Trust violates the Rule Against Perpetuities.

In *Lake of the Woods Ass'n, Inc. v. McHugh*, 238 Va. 1, 380 S.E.2d 872 (1989), it was held that the Rule Against Perpetuities applies to rights of first refusal. *Id.* at 7, 380 S.E.2d at 874. Furthermore, the court held that a right of first refusal that is unlimited in duration and that might not be exercised until after the expiration of the perpetuities period [11] violates the Rule. *Id.* at 7, 380 S.E.2d at 875.

■ The right of first refusal in the instant case is also unlimited in duration and therefore violates the Rule Against Perpetuities. Although Virginia has adopted a "wait-and-see" statute, Va.Code Ann. § 55–13.3 (Michie 1986),[12] this code section does not apply to this case because § 55–13.3 did not become effective until July 1, 1982, many years after the execution of the trust instruments in question. *See Lake of the Woods*, 238 Va. at 7, 380 S.E.2d at 875.

In *Lake of the Woods*, the right of first refusal was part of a contract of sale executed in 1975, and the court therefore refused retroactive application of the wait-and-see statute to the provision in question:[13]

Hence, when the Burts acquired Lot 250 in 1975, they took it free from impediment of the preemptive right created by paragraph 17 [the right of first refusal] and were entitled to sell to whomever they chose. To say that this freedom to dispose of the lot did not amount to a property right or that the right was not vested would be to engage in a bit of sophistry.

Furthermore ... this Court is unwilling to agree to a rule that would permit the destruction of vested or substantive rights by retroactive application of legislation. Indeed, we follow a different rule.

*Id.* 380 S.E.2d at 875–76. Just as in *Lake of the Woods*, the trust instruments in the instant case were executed in the 1970s, well before the effective date of § 55–13.3. Accordingly, on the basis of the Virginia Supreme Court's ruling in *Lake of the Woods*, this court FINDS that Va.Code § 55–13.3 may not be retroactively applied to save the right of first refusal in this case.

■ Moreover, because the excision of ¶ 5 from the Declaration of Trust would not defeat the primary purpose for establishing the trust, which, according to the Declara-

---

**11.** In other words, the right of first refusal, which is conditional, might not vest until after the expiration of the perpetuities period. Although one might draw certain analogies between a right of first refusal of unlimited duration and a trust of unlimited duration, the situations presented by these two cases are, in actuality, different.

The right of first refusal is a conditional right or interest. The vesting of this right depends upon the occurrence of a certain event, usually the contemplated sale of some property. ·This event may or may not come to pass. Therefore, it is impossible for the right to vest *unless* the event or condition actually comes to pass. With a trust of unlimited duration, the trust may vest, as in the instant case, *despite* the fact that the trust may endure longer than the period of time allotted by the Rule Against Perpetuities, provided there are no other conditions precedent preventing vesting.

In essence, what makes a right of first refusal of unlimited duration repugnant to the Rule Against Perpetuities is not the unlimited duration alone, but rather the unlimited duration in conjunction with the inherently conditional or contingent nature of the right of first refusal. A trust, while it may be of unlimited duration, is not inherently conditional or contingent. Therefore, a trust of unlimited duration need not automatically violate the Rule Against Perpetuities.

**12.** The "wait-and-see" provision allows an interest in property which violates the "classic" Rule Against Perpetuities to survive if, in fact, the interest vested within the allowable perpetuities period.

**13.** The court refused to apply the wait-and-see statute retroactively in this case, despite the following relevant language in the statute:

The provisions of this section shall apply (i) to all interests hereafter created, and (ii) to all interests heretofore created except insofar as any conveyance or distribution of the affected property has been made, or any detrimental action has been taken, in reliance upon the common law rule against perpetuities.

Va.Code Ann. § 55–13.3(D) (Michie 1986).

tion of Trust, was to profit the beneficial owners from the proceeds of the property, (Decl. of Trust ¶ 3),[14] the proper course of action is to strike the offending provision from the Declaration of Trust. *Cf. Lake of the Woods*, 380 S.E.2d 872 (striking right of first refusal, while allowing, without discussion, rest of contract of sale to remain in effect); *Sheridan v. Krause*, 161 Va. 873, 172 S.E. 508, 518 (1934) (striking invalid portion of testator's trust, but giving effect to valid portion where it was "in accordance with the general intent of the testator; i.e., when the result produced is one which it would be reasonable to assume the testator intended to accomplish whether his full intention could be given effect or not"). *See generally* 1A A. Scott & W. Fratcher, *The Law of Trusts*, § 65.1 at 376, 377–78 (4th Ed.1987) ("Where by the terms of the trust the trustee is directed to do an act that is illegal, the whole trust does not fail unless the direction is an essential part of the purpose of the settlor.... [Where provisions are illegal as in violation of the Rule Against Perpetuities], [t]he question then arises whether these provisions alone fail or whether the whole trust fails. That depends on whether the provisions that fail can be separated from the other provisions without defeating the purpose of the settlor in creating the trust."). Accordingly, the court STRIKES ¶ 5 from the Declaration of Trust.

### C. Trusteeship

■ The court FINDS that Thora Brout Pollak, as Mr. Brout's personal representative, is, for the present, the acting trustee of the trust in this case. Under Virginia law, if the trust document itself does not provide for successor trustees, the state court for the county or city in which the document in question could have been recorded may appoint a new trustee or trustees:

> When a trustee in a will, deed or *other writing* (1) dies ... the circuit court of the county, or the circuit, corporation or other court of the city in which such ... other writing is or might have been recorded ... may on motion of any party interested, and upon satisfactory evidence of such death ... appoint a trustee or trustees in place of the trustee or trustees named in such instrument.

Va.Code Ann. § 26–48 (Michie 1985) (emphasis added). The code further provides that, until such time as a new trustee can be appointed under § 26–48, the personal representative of the deceased sole trustee shall execute the trust. Va.Code Ann. § 26–51 (Michie 1985). In its memorandum of law, Plaintiff concedes that Defendant, as the personal representative of Albert Brout, is "currently empowered as Trustee." (Pl.'s post-trial mem. at 2). Accordingly, until such time as an interested party moves the appropriate state court for appointment of a new trustee, Thora Brout Pollak is the trustee. As such, Ms. Pollak holds legal title to the Old Towne properties, and she solely, but within the limits set by the valid provisions of the Declaration and Supplemental Declaration of Trust, is empowered to make the management decisions concerning Old Towne I and II.

### III. Conclusion

For the foregoing reasons, the court FINDS that the Declaration and Supplemental Declarations of Trust, as a whole, create a valid trust that does not violate the Rule Against Perpetuities nor that unduly fetters the underlying property. However, the court STRIKES ¶ 5 of the Declaration of Trust, which provides for a right of first refusal of unlimited duration, as violative of the Rule Against Perpetuities. Finally, the court FINDS that, pursuant to Va.Code § 26–51, Thora Brout Pollak, as the personal representative of the original trustee, Albert T. Brout, is the current trustee of the Old Towne I and II Trust.

---

**14.** Paragraph 3 of the Declaration of Trust states:

> 3. It is agreed by and between the parties that said property has been acquired for investment and the said parties shall share the profit and loss that may be derived therefrom in accordance with their ratio of interest therein and above recited.

The Clerk is DIRECTED to mail a copy of this Opinion and Order to counsel for plaintiff and defendant.

It is so ORDERED.