LAKE OF THE WOODS ASSOCIATION, INC.

V.

WILLIAM M. MCHUGH, ET AL.

Record No. 870693

JACK MILTON JAMES, ET AL.

V.

MARVIN R. BURT, ET AL.

Record No. 870694

June 9, 1989

Present: All the Justices

2

*Atwell W. Somerville (Somerville, Moore & Somerville, Ltd.,* on briefs), for appellant. (Record No. 870693)

*Robert H. Blodinger* for appellees William M. McHugh and Quirina Harryette Sanders McHugh. (Record No. 870693)

*John A. Blazer (Crews and Hancock,* on brief), for appellees Helen V. Sanders, Richard I. Smith and William T. Nichols. (Record No. 870693)

No brief or argument for appellees Marvin R. Burt, Joy Lee Burt, Jack Milton James and Agnes Pakosta James. (Record No. 870693)

*Mark S. James (John G. Berry; Berry & Early*, on briefs), for appellants. (Record No. 870694)

*Robert H. Blodinger* for appellees William M. McHugh and Quirina Harryette Sanders McHugh. (Record No. 870694)

No brief or argument for appellees Marvin R. Burt and Joy Lee Burt. (Record No. 870694)

Chief Justice Carrico delivered the opinion of the Court.

Both these appeals stem from the same final decree and present the same principal question, *viz.*, whether a right of first refusal is subject to the rule against perpetuities. If so, a subsidiary question is whether Code § 55-13.3, Virginia's "wait and see" statute, may be applied retroactively to save the right of first refusal involved in this case. The trial court held that the rule is violated and that the "wait and see" statute may not be applied retroactively to save the right. We agree with the trial court and will affirm its holdings.

The source of this controversy is found in paragraph 17 of the Declaration of Restrictions applicable to Lake of the Woods Subdivision in Orange County. Dated February 8, 1967, and recorded March 1, 1967, paragraph 17 provides in pertinent part:

Whenever the owner of any lot . . . shall receive a bona fide offer to purchase said lot, which offer is acceptable to said owner, . . . said owner shall offer to sell said lot, at the price and on the same terms contained in said bona fide offer . . . , first to the owner of the lot on the right of the prospective seller's lot, next to the owner of the lot on the left of the prospective seller's lot, and finally, to the [corporation developing the subdivision], its successors or assigns. Such offerings shall be made successively, and each of said offerees shall have ten (10) days within which to accept or refuse such offer. . . . The 'lot on the right,' for purposes of this paragraph 17, shall be the next lot on one's right hand as one faces the rear of one's own lot.

The subject of the controversy is Lot 250, Section 8, Lake of the Woods Subdivision. On October 9, 1985, Jack Milton James and Agnes Pakosta James (the Jameses) filed in the trial court a bill of complaint alleging that they were the owners of Lot 249, the "lot on the left" of Lot 250. The bill further alleged that the defendants Marvin R. Burt and Joy Lee Burt (the Burts) acquired Lot 250 in 1975 and on April 25, 1985, conveyed it to the defendants William M. McHugh and Quirina Harryette Sanders McHugh (the McHughs) without first offering to sell the lot to the Jameses, "as required in paragraph 17."

Also named defendants to the bill were Helen V. Sanders, Richard I. Smith, and William T. Nichols, owners of Lot 251, the "lot on the right" of Lot 250,[1] and Lake of the Woods Association, Inc. (the Association), successor in interest to the corporation developing the subdivision. The bill prayed that the court vacate the sale of Lot 250 from the Burts to the McHughs, order the conveyance of the lot to the Jameses, and quiet title in them "as against the Defendants and all the world."

After the defendants filed responsive pleadings, the McHughs moved for summary judgment, alleging, *inter alia*, that paragraph 17 "and any interest or rights created thereunder . . . are void *ab initio* as being in violation of the Rule against Perpetuities." Following argument, the court granted the motion and entered final judgment in favor of the McHughs. We granted separate appeals to the Association, Record No. 870693, and the Jameses, Record No. 870694.

This Court has not previously decided whether a right of first refusal is subject to the rule against perpetuities. We have held that an option contract is subject to the rule and that any interest created by such a contract is void *ab initio* if, at its crea-

---

[1] The bill alleged that the defendants Sanders, Smith, and Nichols had "asserted [in a notarized writing] that they do not wish to . . . exercise [their right of first refusal]" and, therefore, that they had been "named in this action solely for the purpose of quieting title by fully adjudicating this controversy." In their answer, Sanders, Smith, and Nichols alleged that they had been misled into executing the notarized writing. They stated further that the portion of the writing wherein they purportedly waived their right of first refusal was "withdrawn" and that they reserved "any right of first refusal guaranteed them" by paragraph 17. On appeal, they argue we should affirm the judgment of the trial court but, in the event we reverse, we should remand the case "for further proceedings, including determination of whether Sanders, Smith and Nichols retain their right of first refusal." Since, as indicated earlier in the text, we will affirm the judgment of the trial court, we need not further consider the interest of Sanders, Smith, and Nichols.

tion, there is a possibility the option may not be exercised within a period normally measured by a life or lives in being plus 21 years and 10 months. *Layne* v. *Henderson*, 232 Va. 332, 336, 351 S.E.2d 18, 21 (1986). Where the optionee is a corporate entity, however, and the parties do not contract with reference to a life or lives in being, 21 years from the date of the creation of the interest is the determinative period. *The Ryland Group* v. *Wills*, 229 Va. 459, 463, 331 S.E.2d 399, 402 (1985).

The Association and the Jameses argue that we should not apply the rule against perpetuities to a right of first refusal. They characterize a right of first refusal as "preemptive" and as differing substantially from an option contract. They point out that an option contract creates in the optionee the power to compel the owner to sell at a set price, whether or not he wants to sell when the option is exercised. On the other hand, the argument continues, the holder of the right of first refusal has no power to compel the owner to sell; rather, the right of first refusal only becomes operative if and when the owner decides to sell. Even then, all the owner is required to do is offer the property to the holder at a fixed price, or at market value, or at the price a third party is willing to pay.

Furthermore, the Association and the Jameses say, the evil the rule against perpetuities is designed to prevent, *viz.*, undue interference with the free alienability of land, does not exist in the case of a right of first refusal. To the contrary, they assert, restrictions similar to paragraph 17 make property more desirable and valuable. For example, paragraph 17 assures an owner of at least three prospective purchasers and the probability of receiving market value for his land. The Jameses make the further point that application of the rule against perpetuities in this particular case "threatens to disrupt a scheme of development that has to date contributed in a positive fashion to the growth and prosperity of [the Lake of the Woods] community."

The Association and the Jameses acknowledge that there is a split of authority on the question whether the rule against perpetuities should be applied to a right of first refusal. They do not represent, however, that the view they espouse is the majority rule. Instead, in their petitions for appeal, they relied most heavily upon the decision of the Court of Special Appeals of Maryland in *Dennis Rourke Corp.* v. *Ferrero Constr.*, 64 Md. App. 694, 498 A.2d 689 (1985), in which the court conceded it was "persuaded

that the minority position is the better view," *id.* at 702, 498 A.2d at 693, when it held that the rule against perpetuities should not be applied to a right of first refusal.

By the time the Association and the Jameses filed their opening briefs in this Court, however, the Court of Appeals of Maryland had reversed the Special Court of Appeals' decision in the *Dennis Rourke* case. *Ferrero Constr. v Dennis Rourke Corp.*, 311 Md. 560, 536 A.2d 1137 (1988). Given this reversal, the Association and the Jameses now promote the opinion of the minority in the Court of Appeals, with the Jameses saying it is "a well reasoned dissent, which [they] believe represents the better view."

██ We disagree. We think that the majority opinion of the Court of Appeals is more convincing and that it expresses the better view. It also follows what is clearly the majority rule. The court stated:

> The vast majority of courts and commentators have held that rights of first refusal, which are more commonly known as 'preemptive rights,' are interests in property and not merely contract rights. This is so because, if the property owner attempts to sell to someone other than the owner of the right of first refusal ('the preemptioner'), the latter may have a court of equity enter a decree of specific performance ordering that the property be conveyed to him. Thus, the preemptioner acquires an equitable interest, which will vest only when the property owner decides to sell.
>
> As rights of first refusal are interests in property, the great majority of American jurisdictions have applied the Rule Against Perpetuities to such rights.

*Id.* at 565, 536 A.2d at 1139 (citations omitted). The court continued:

> In light of this widespread acceptance of the majority view, we should hesitate before attempting to fashion an exception to the Rule Against Perpetuities for rights of first refusal. In this area of property law, vested rights and settled expectations are at stake. A departure from settled law might introduce doubt as to the value of vested rights. Moreover, the contours of an exception for rights of first refusal might prove difficult to define. Consequently, the policies favoring certainty and stability strongly support our follow-

ing the majority of courts and applying the Rule Against Perpetuities to rights of first refusal.

*Id.* at 567, 536 A.2d at 1140.

■ We agree with the Court of Appeals of Maryland and hold, as it held, that the rule against perpetuities should be applied to rights of first refusal. No contention is made by the Association or the Jameses that if the rule applies, the right of first refusal involved in this case does not violate the rule. Unquestionably, the right involved here does violate the rule. The right is of unlimited duration, and, at the time it was created, the possibility existed that it might not be exercised until after the expiration of the period fixed by the rule, if ever.

■ There remains the question whether Code § 55-13.3, the "wait and see" statute, is applicable to save the right of first refusal from the operation of the rule against perpetuities. Paragraph (A) of Code § 55-13.3 contains the "wait and see" provision. It states in pertinent part that "a transfer of an interest in property fails, if the interest does not vest, if it ever vests, within the period of the rule against perpetuities."[2]

■ Code § 55-13.3 did not become effective until July 1, 1982, well after the Burts acquired Lot 250 in 1975. Hence, if the statute is to save the right of first refusal, retroactive application is required. Paragraph (D) of Code § 55-13.3 relates to retroactive application. The paragraph reads:

> The provisions of this section shall apply (i) to all interests hereafter created, and (ii) to all interests heretofore created except insofar as any conveyance or distribution of the affected property has been made, or any detrimental action has been taken, in reliance upon the common law rule against perpetuities. Any interests provided for in a will shall not be considered 'created' during the testator's lifetime.

The trial court found that, even though there had been no conveyance made or detrimental action taken by the Burts in reliance

---

[2] Under [the 'wait and see'] doctrine, the rule against perpetuities is determined to have been violated or not by taking into consideration events which occur after the period fixed by the rule has commenced. If, upon a later look, the event upon which an interest was made contingent is found to have occurred and the interest has vested or has become certain to vest within the period fixed by the rule, the rule is held not to have been violated.

*United Virginia Bank v. Union Oil*, 214 Va. 48, 53, 197 S.E.2d 174, 177-78 (1973).

upon the common law rule against perpetuities prior to the effective date of Code § 55-13.3, the statute could not be applied retroactively. The court said:

> The rule against perpetuities, being a rule of property, invalidated [paragraph] 17 as a part of the 1975 deed [to the Burts]. [The Burts] then had the right to convey the lot free of the obligations of the pre-emption. To apply the ['wait and see'] statute to revive the pre-emption in 1982 [the effective date of the statute] (and thus continuing to 1985) [when the Burts conveyed Lot 250 to the McHughs] would be to destroy a vested property interest of [the Burts].

The Association and the Jameses agree that the question on appeal is whether retroactive application of Code § 55-13.3 would be constitutional in this case. The Association argues that only a procedural right, not a substantive or vested right, is involved here. The Jameses argue that "[i]n the approximately fifteen states that now have enacted 'wait and see' perpetuities legislation, two others beside Virginia have specifically included sections requiring the retroactive application of their statutes." The Jameses say that in these two other states, Iowa and Pennsylvania, retroactive application of the "wait and see" doctrine has been upheld. *Henderson* v. *Millis*, 373 N.W.2d 497 (Iowa 1985); *In re Frank*, 389 A.2d 536 (Pa. 1978).[3]

We disagree with the Association that only a procedural right is involved here. The restriction created in 1967 by the Declaration of Restrictions was *"ipso facto* and *ab initio void." Claiborne* v. *Wilson*, 168 Va. 469, 474, 192 S.E. 585, 586 (1937) (citation omitted). Hence, when the Burts acquired Lot 250 in 1975, they took it free from the impediment of the preemptive right created by paragraph 17 and were entitled to sell to whomever they chose. To say that this freedom to dispose of the lot did not amount to a property right or that the right was not vested would be to engage in a bit of sophistry.

---

[3] The Jameses also cite *Pension Benefit Guaranty Corp.* v. *R. A. Gray & Co.*, 467 U.S. 717 (1984). This case, the Jameses say, stands for the proposition that retroactive application of a statute is permissible even against a due process claim so long as the retroactive application has a rational legislative purpose. The Supreme Court's opinion, however, makes no mention of vested rights.

 Furthermore, with due respect to the authorities cited by the Jameses, this Court is unwilling to agree to a rule that would permit the destruction of vested or substantive rights by retroactive application of legislation. Indeed, we follow a different rule. *Rotonda Cond. Owners v. Rotonda Associates*, 238 Va. 85, 90, 380 S.E.2d 876, 879 (1989); *City of Norfolk v. Kohler*, 234 Va. 341, 345, 362 S.E.2d 894, 896 (1987); *School Bd. of the City of Norfolk v. U.S. Gypsum*, 234 Va. 32, 39, 360 S.E.2d 325, 328 (1987); *Bartholomew v. Bartholomew*, 233 Va. 86, 91, 353 S.E.2d 752, 755-56 (1987); *Potomac Hospital Corp. v. Dillon*, 229 Va. 355, 359-61, 329 S.E.2d 41, 44-45, *cert. denied*, 474 U.S. 971 (1985); *Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424-25, 323 S.E.2d 102, 105 (1984); *Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 753-54 (1984).

Finding no error in the actions of the trial court, we will affirm its judgment.[4]

*Affirmed.*

---

[4] It appears that after the trial court announced its decision that the right of first refusal involved in this case was subject to the rule against perpetuities but before the court ruled on the retroactive application of Code § 55-13.3, the Jameses filed in the clerk's office of the trial court a contract purporting to be the agreement of sale between the Burts and the McHughs. The Jameses also sought to amend their pleadings, apparently in an effort to inject into the case a contention that the Burts and the McHughs had, by the contract, revived paragraph 17 of the Declaration of Restrictions. The court, by order, ruled that the contract should not be made a part of the record and that the Jameses should be denied leave to amend "certain pleadings in this cause." The Jameses say on appeal that whether the Burts and the McHughs revived the restriction is a question "open for decision" and that we should remand the case for "a factual inquiry" into the matter. We decline. Whether, under the circumstances, the trial court should have allowed amendment of the pleadings and made the contract a part of the record were matters within the court's discretion, and we find no abuse of that discretion.