## CIRCUIT COURT OF FAIRFAX COUNTY

L. Farnum Johnson, Jr., et al.

v.

Richard D. Ferris, Trustee, et al.

May 31, 2001

Case No. (Law) 188047

BY JUDGE DAVID T. STITT

This matter came before the Court for bench trial on December 6, 2000. At the conclusion of trial, the Court took the matter under advisement and directed counsel to submit legal memoranda on the issues raised for the Court's further consideration.

The Court has reviewed the memoranda of counsel, the authorities cited therein, and the testimony and evidence presented at trial. The Court makes the following findings of fact and conclusions of law.

### I. *Background*

This case concerns the validity of a right of first refusal to purchase real property. Joseph and Ruth Launders ("Launders") purportedly granted the right of first refusal in 1970 to Richard D. Ferris, individually and as Trustee, and Raymond T. Bond, Trustee ("Defendants"). The Launders were the predecessors in title to L. Farnum Johnson, Jr., and Jeffrey J. Fairfield, Managing Co-Trustees of the Ruth C. Launders Marital Trust, and to L. Farnum Johnson, Jr., Trustee, John W. Fehrs, Sr., Trustee, and Rebecca Fehrs, Trustee, Co-Trustees of the Ruth C. Launders Revocable Trust ("Plaintiffs").

Plaintiffs contend that they are not bound by the right of first refusal for the following reasons: (1) it is void for failure to comply with the common law

8

Rule Against Perpetuities; (2) if the right of first refusal ever was legally valid, it was terminated by written agreements between Defendants and the Launders in 1979; and (3) in any event, the right of first refusal fails for lack of precision.

The Launders owned approximately 235 acres of land in the town of Herndon in Fairfax County, Virginia. Joseph Launders was a real estate broker and dealer who was acquainted with the Defendants.

On June 16, 1970, the Launders contracted to sell to the Defendants up to 200 of the 235 acres of land. (Pl. Exh. 1.) The contract called for the Defendants to have the land surveyed and divided into five sub-parcels to be known as Parcels A through E. Parcels A through D were to contain 50 acres each, while parcel E, referred to as the "Home Site," would contain the remaining acres. (Pl. Exh. 1.) No survey was ever prepared, and the land was never divided into five parcels. (Tr. pp. 64-65.)[1]

On December 10, 1970, Defendants settled on a purchase of 50 of the 200 acres. Under the terms of the sales contract, Defendants retained an option to purchase the remaining 150 acres. The option to purchase expired on November 30, 1976, and was contingent on the Defendants' paying the annual real estate taxes on the 150 acres. (Pl. Exh. 1, ¶ 4.) Defendants never exercised their option to purchase.

The June 16, 1970, sales contract did not give the Defendants a right to purchase the 35-acre Home Site. However, on December 18, 1970, Launders signed an addendum to the June 16, 1970, sales contract, granting a right of first refusal to Defendants to purchase the "proposed parcel E," an estimated 35 to 38 acres upon which are located improvements including the Home Site and pond. (Pl. Exh. 2.) Defendants could exercise their right of first refusal if the Home Site were "ever offered for sale." Both the June 16, 1970, sales contract and the December 18, 1970, addendum thereto, refer to Defendants as trustees. However, it is conceded that no trust agreement ever existed. Rather, Defendants were acting as partners with respect to the transactions. (Tr. p. 89.)

In February 1979, the Launders decided to sell the remaining 150 acres to F. Lienard. Defendants then asserted an interest in the property even though their option under the 1970 sales contract seemingly had expired in November 1976. The dispute resulted in the execution of three agreements among the parties. The first agreement is dated February 16, 1979, and the latter two agreements are dated March 1, 1979. (Pl. Exhs. 3, 4, 5, 10.)

---

[1] References to the transcript of the December 6, 2000, trial are designated as "Tr." followed by page numbers.

The February 16, 1979, agreement, which both Ferris and Bond signed, includes the Defendants' waiver of "any and all right, title, and interest, if any, to the subject and any other property of the Owners in Fairfax County, Virginia. . . ." (Pl. Exh. 3, ¶ 4.) In the February 16, 1979, agreement, the Launders promised to pay $75,000 each to Defendants Ferris and Bond in the event of a sale to F. Lienard.

The first of the March 1, 1979, agreements allegedly supplemented the February 16, 1979, agreement by acknowledging that Defendant Ferris retained a right of first refusal to purchase the Home Site, but further provided that the right of first refusal "shall extend to any contracts of sale submitted on the aforementioned property for a period of six months from the execution of this Agreement. . . ." (Pl. Exh. 4.)

Joseph Launders died in September 1996, and his will created a marital trust for the benefit of Ruth Launders. Mr. Launders' executors conveyed his half interest in the Home Site to L. Farnum Johnson, Jr., and Jeffrey L. Fairfield, Trustees of the Ruth C. Launders Marital Trust.

Ruth Launders owned a one-half interest in the Home Site by virtue of having been a tenant in common with Joseph Launders. Mrs. Launders conveyed her one-half interest in the property by deed dated July 19, 1999, to the Ruth C. Launders Revocable Trust. (Pl. Exh. 8.)

On August 26, 1997, Defendant Ferris had the December 18, 1970, addendum (Pl. Exh. 2) recorded in the Office of the Clerk of the Circuit Court of Fairfax County. When the Plaintiffs became aware of the recordation, they filed the instant Declaratory Judgment action pursuant to Va. Code § 8.01-184 for a determination of the validity and legal effect of the addendum. The addendum was recorded nearly 27 years after it was signed by the parties and nearly one year after the death of Joseph Launders.

## II. *Analysis*

### A. *Jurisdiction*

Defendants contend that Plaintiffs' Motion for Declaratory Judgment is premature, citing the testimony of Jeffrey Fairfield that "we would not offer this real property for sale until his [Mr. Launders'] wife died." (Tr. p. 29.) "We have no intention of offering it for sale while Mrs. Launders is alive, and we have not listed it for sale with any real estate broker." (Tr. p. 37.) Defendants argue that because the right of first refusal cannot be exercised until the Home Site is offered for sale, no justiciable controversy exists.

However, Va. Code § 8.01-184 authorizes the court to make binding adjudications of right in "controversies involving the interpretation of deeds, wills, and other instruments of writing. . . ." Further, Va. Code § 8.01-191 states that the article affording declaratory relief is to be "liberally interpreted" and that its "purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor."

In the instant case, Defendants have asserted a right of first refusal. The Virginia Supreme Court has recognized a right of first refusal as an interest in property. *Lake of the Woods Association v. McHugh*, 238 Va. 1, 380 S.E.2d 872 (1989). Plaintiffs hold legal title to the property, and the Defendants, by their recordation of the addendum dated December 18, 1970, have asserted that they too have a legal interest in at least a portion of the property. Thus, an actual controversy exists between the parties, and the controversy is "justiciable" because there is a real and present dispute. The mere fact that the alleged right of first refusal is not exercisable by the Defendants at this moment does not make the controversy hypothetical. This determination is made with due consideration of *Liberty Mutual Ins. v. Bishop*, 211 Va. 414, 177 S.E.2d 519 (1970), where the Virginia Supreme Court indicated that the power to make declaratory judgments is discretionary and must be exercised with care and caution.

## B. *Rule Against Perpetuities*

Ordinarily, an interest in property must vest within a period measured by a life or lives in being plus 21 years and 10 months. *The Ryland Group, Inc. v. Wills*, 229 Va. 459, 463, 331 S.E.2d 399, 402 (1985). Stated differently, an executory interest is void for remoteness if, at its creation, there exists a possibility, however remote or uncertain, that the interest will not take effect within the period required by the rule. *Skeen v. Clinchfield Coal Corp.*, 137 Va. 397, 403, 119 S.E. 89, 90 (1923). Further, the rule against perpetuities [applies] to rights of first refusal. *Lake of the Woods Association, Inc. v. McHugh*, 238 Va. 1, 380 S.E.2d 872 (1989).

In 1970, when the addendum at issue was signed, the common law Rule Against Perpetuities was the law in Virginia. The 1982 "wait and see" statute, Va. Code § 55-13.3, modified the common law rule, but does not apply retroactively. *Lake of the Woods Association; Inc. v. McHugh*, 238 Va. 1, 380 S.E.2d 872 (1989). An interest violates the rule if it conceivably could vest after the end of lives in being plus 21 years and 10 months. 238 Va. at 4-5.

The addendum at issue imposes no time limitation on the exercise of the right. Rather, the addendum provides the right may be exercised if the Home Site "is ever offered for sale."

Defendants contend that the right of first refusal is personal to the grantees, Ferris and Bond, is not assignable, and can be exercised by them only during their lifetimes. Defendants cite *Layne v. Henderson*, 232 Va. 332, 351 S.E.2d 18 (1986), for the proposition that if a contract does not include language extending the benefit to heirs, successors, or assigns of the purchasers, the right must be exercised within the lifetime of the purchasers. In *Layne*, the instrument did not violate the rule because the option must have been exercised, if at all, within the lifetime of the purchasers, who were the measuring lives in being at the time the executory interest was created. However, *Layne* is distinguishable from the case at bar because the Court in *Layne* found specific language in the agreement to be evidence of a clear intent that the duration of the option was limited to the lives of the three brothers or the survivors among them:

> Even though the broad question in this appeal is whether the contract violates the rule against perpetuities, the specific issue to be addressed involves the meaning and effect of the phrase "survivor or survivors," within the context of this agreement. Therefore, resolution of this controversy principally requires interpretation of a contract . . . upon such examination, we hold that, in this contract, the words, "survivor or survivors" refer to the three brothers, not their estates, successors, or assigns. . . . Significantly, the language of this document limits the phrase "survivor or survivors" to "either of them." And, "them" can only mean the brothers. We also hold that the proper construction of the words as used in the agreement requires exercise of the option within the lifetime of the brothers. The whole tenor of the agreement demonstrates an intention to ensure that the brothers retain exclusive ownership of the subject property. . . .

*Layne v. Henderson*, 232 Va. 332, 351 S.E.2d 18 (1986).

In the instant case, the addendum imposes no time limitation on the exercise of the right. To the contrary, it purports to arise if the Home Site "is *ever* offered for sale." (Emphasis supplied.) Further, there is no language in the addendum indicating it is personal to the Defendants and not assignable. The addendum provides in relevant part, as follows:

12

Witnesseth, that in consideration of a settlement held this day on the purchase of the first fifty (50) acres, Parcel A, under said contract, the sellers do hereby agree as follows:

That in the event the same is ever offered for sale, the purchasers shall have the option of first refusal to purchase the "Proposed Parcel E" shown on that certain plat by Richard B. Allison, C.L.S., upon which are located the improvements including the homesite and pond, and estimated but not known to contain between 35 and 38 acres.

It is conceivable that the real property in question might be handed down for generations before being offered for sale. The addendum does not state whether the right is binding on the heirs or assigns of the parties. However, that omission does not require the conclusion that the right of first refusal is not assignable. The general rule of interpretation is that in the absence of an express provision against assignment of a contract not involving personal skill, trust, or confidence, the contract is freely assignable. In *J. Maury Dove Co. v. New River Coal*, 150 Va. 796, 143 S.E. 317 (1928), the Court held that:

It is settled law that as a general rule the obligation arising under a contract may be assigned to a third party, the assignment or transfer may be made to appear by oral statements of the parties or by their acts and conduct. When the contract contains mutual obligations and liabilities or involves a relation of personal confidence, it cannot be assigned by one party without the consent of the other.

In this case, the right of first refusal does not involve a personal confidence or performance involving personal skill or diligence. The right of first refusal merely obligated the Launders to permit the Defendants to match any offer to purchase the property. The right obviously would have value to an assignee, and the testimony at trial that the right of first refusal was personal and not assignable was unpersuasive. The right of first refusal violates the Rule Against Perpetuities because an assignee of the Defendants could have exercised the right if the Home Site were offered for sale beyond the period of the rule. Therefore, the 1970 first right of refusal is unenforceable.

Although the finding that the right of first refusal violates the Rule Against Perpetuities is dispositive, in the interest of judicial economy, the Court will address the issue of the termination of the right of first refusal.

## C. *Termination of the Right of First Refusal*

Following the December 18, 1970, addendum to the June 16, 1970, sales contract, the Defendants entered into an agreement on February 16, 1979. In this agreement the Defendants expressly waived "any and all right, title, and interest, if any, to the subject and any other property of the Owners in Fairfax County, Virginia. . . ." (Pl. Exh. 3, ¶ 4.)

A handwritten notation appears in the margin of Plaintiffs' Exhibit 3. The notation is not present on Plaintiffs' Exhibit 10, which is otherwise identical to Plaintiffs' Exhibit 3. There is no indication when the notation was made, and the Court will not speculate as to the identity of its author even though Ferris testified that it appears to be in Mr. Launders' handwriting. (Tr. pp. 57-58.) Therefore, there is an insufficient basis for this Court to hold that the notation constitutes an integral part of the February 16, 1979, agreement.

A subsequent agreement between the parties, dated March 1, 1979, affirmed that Defendant Ferris retained a right of first refusal to purchase the Home Site (containing approximately 35 acres) as well as another eleven-acre parcel. (Pl. Exh. 4, ¶ 2.) However, this March 1, 1979, agreement specified that the right of first refusal was limited to any contracts of sale submitted "for a period of six months from the execution of the Agreement." (Pl. Exh. 4, ¶ 2.)

The Court finds that by the following clear and unambiguous language in the February 16, 1979, agreement, Ferris and Bond released all rights in Launders' real property, including any right of first refusal.

Whereas, the Owners and Richard D. Ferris and Raymond T. Bond, Trustees . . . entered into a Sales Agreement dated June 16, 1970 . . . regarding approximately 200 acres of land in Fairfax County, Virginia;

Whereas, a dispute exists between the parties relating to the option to purchase by the joint venturers as set forth in Exhibit "1";

Whereas, the owners have received a contract to purchase 150 acres (the subject property) from a third party (F. Lienard) and the joint venturers claim that such property is included within their option and the Owners deny this;

Whereas, the parties hereto desire to settle and compromise the various claims between the parties hereto with respect to the option . . . any other rights or agreements concerning such option, and any other options relating to the option to purchase the Owners' property in Fairfax County, Virginia . . . the parties agree as follows:

14

4. As part of the consideration for entering into this Agreement, the joint venturers agree that they have not conveyed, assigned, nor encumbered their claimed option, and have the right to assign it, and *they hereby assign and convey any and all right, title, and interest, if any, to the subject and any other property of the Owners in Fairfax County, Virginia, or option to purchase same to the Owners.*

(Emphasis supplied.)

Subsequently, a new right of first refusal was created by the March 1, 1979, agreement. The March 1, 1979, right of first refusal was of limited duration, as evidenced by the following:

Whereas, the Owners and Ferris and others have entered into an Agreement dated the 16th day of February, 1979, regarding a certain Sales Agreement dated June 16, 1970, regarding approximately 200 acres of land in Fairfax County, Virginia;

2. It is recognized that Ferris solely retains the right of first refusal to purchase the home place where the owners presently live, containing approximately 35 acres shown as Parcel E . . . as well as approximately 11 acres of property described as Parcel 4A in a Contract of Sale of February 19, 1979, between F. Lienard, Trustee and the Owners. *This right of first refusal shall extend to any contracts of sale submitted on the aforementioned property for a period of six months from the execution of this Agreement by all parties hereto.*

(Emphasis supplied.)

Defendants contend that the six-month limitation applies only to the 11-acre parcel and not to the Home Site.

However, the text of Paragraph 2 does not support an inference that there are two separate rights of first refusal applicable to different parcels of land. The language employs the singular in each reference to the right of first refusal. Hence, the compromise struck by the parties granted one right of first refusal, for a period of six months, extending to two parcels of real estate.

Consequently, by its own terms, the right of first refusal in the Home Site expired on September 1, 1979, six months after the date of execution of the March 1, 1979, agreement.