COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and White

HONG THANH HA

MEMORANDUM OPINION[*] BY
v.      Record No. 1348-24-4      JUDGE KIMBERLEY SLAYTON WHITE
FEBRUARY 10, 2026

PHILIP HA

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Tracy C. Hudson, Judge

(Joseph A. Cerroni, on brief), for appellant.[1] Appellant submitting
on brief.

(Daniel A. Harvill; Daniel A. Harvill, PLLC, on brief), for appellee.
Appellee submitting on brief.

BACKGROUND

The appellant, Hong Thanh Ha, moved into a home owned by her siblings, Philip Ha, Tu

Hoang Ha, and Ha Thanh Ha (Geraud), in 2010 to care for their aging parents. Hong's siblings

owned the house as joint tenants with the right of survivorship. From 2010 to 2021, the siblings

allowed Hong to live in the house without paying rent. In 2022, however, the appellee, Philip

Ha, assisted Hong in applying for social services so she could pay rent. Philip and Hong reached

an oral agreement that required Hong to pay him $400 per month in rent. After paying rent for

several months, Hong stopped paying rent.

The following year, from February to May, she made several rent payments to Philip, but

the checks were defective. Soon after, on June 23, 2023, Philip posted a 30-day notice on

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Prior to the case being considered by the panel, counsel for appellant was permitted to
withdraw. Appellee counsel and appellant, *pro se*, waived oral argument.

Hong's door to vacate the property. When Hong refused to leave the property, on July 11, 2023, Philip sent another 30-day notice to vacate the property to the sheriff's office, who delivered it to her the next day. After Hong refused to leave the property, Philip filed an unlawful detainer suit for possession of the home under the Virginia Residential Landlord-Tenant Act in the General District Court of Prince William County. The trial court entered a default judgment against Hong when she failed to appear, awarding possession of the home to Philip. She appealed to the circuit court.

At trial, Hong introduced a document purporting to set forth the terms of an agreement between Hong and Geraud. The document was dated June 17, 2023, and stated that Hong could "stay" in the home from June 17, 2023 to December 31, 2024. Philip was unaware of the purported agreement and objected to the document as hearsay. In response, Hong argued that the document fell under the hearsay exception for "statement[s] contained in a document purporting to establish or affect an interest in property." Va. R. Evid. 2:803(15). The trial court sustained Philip's objection, holding that the hearsay exception applies to dispositive documents such as deeds or trusts and that the proposed exhibit was not such a document.

Following Philip's evidence, Hong moved to strike, arguing that Philip lacked standing to bring the unlawful detainer action against her because he did not have the consent of his co-tenants. Hong argued that because she had an agreement with Geraud allowing her to stay in the house, Philip could not evict her. Hong further claimed that, since Philip and Geraud are co-tenants with equal property rights, Philip's desire to evict Hong could not override Geraud's permission to allow her to stay in the home. Instead, according to Hong, Philip was required to

-2-

get permission from each of the co-tenants to evict her but failed to do so.  Therefore, she

concludes, Philip lacked standing to bring an unlawful detainer action against her.[2]

The trial court rejected her motion, ruling that Philip, as a co-tenant and owner, had a

superior property interest to Hong and thus had standing to bring the action without permission

from his co-tenants.  After the presentation of all of the evidence, the trial court denied Hong's

renewed motions and granted Philip possession of the house.  Hong properly noted her

exceptions to the final order and appealed.

ANALYSIS

I.  Admissibility of Hearsay Exceptions for Property Documents

A trial court's evidentiary rulings are reviewed "under an abuse of discretion standard."

*Boyce v. Commonwealth*, 279 Va. 644, 649 (2010).  "If an admissibility determination involves a

question of law, however, we review that issue de novo."  *Khine v. Commonwealth*, 75 Va. App.

435, 444 (2022).  If a trial court erroneously refuses to admit evidence, "by definition [it] abuses

its discretion when it makes an error of law."  *Koon v. United States*, 518 U.S. 81, 100 (1996).

As a result, when interpreting the text of evidentiary rules, we give no deference to the trial

court's legal conclusions.

At trial, the court ruled that the agreement between Hong and Geraud was inadmissible

hearsay because only dispositive documents, such as deeds and trusts, fall under the Virginia

Rules of Evidence's hearsay exception.[3]  Virginia's Rules of Evidence define hearsay as "a

---

[2] During the motion to strike, Hong also alleged a violation of a notice provision set forth in Code § 55.1-1204.  Among her allegations of error alleged in her appeal is the trial court's denial of her motion to dismiss on that ground.  However, she completely abandoned that allegation on brief and we do not consider it.  Rule 5A:20.

[3] Neither at trial nor on brief to this court did Hong assert any other basis for the admission of the document other than the Virginia Rule of Evidence.  Therefore, we limit our review to that argument preserved.

statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is inadmissible unless permitted by an exception, and the party offering the evidence must 'clearly show' that the exception applies." *Khine*, 75 Va. App. at 444-45 (quoting *Clay v. Commonwealth*, 33 Va. App. 96, 104 (2000) (en banc), *aff'd*, 262 Va. 253 (2001)). As relevant here, the Virgina Rules of Evidence contain an exception to the bar on hearsay evidence for certain statements "contained in a document purporting to establish or affect an interest in property." Va. R. Evid. 2:803(15). Thus, Hong must "clearly show" that the statement purporting to establish Geraud's grant of permission to remain on the premises falls within that exception. *Khine*, 75 Va. App. at 445.

Although no Virginia case law has interpreted Rule 2:803(15), the Rule is identical to the Federal Rule of Evidence and has been interpreted by both out of state and federal courts.[4] The Federal Advisory Committee Notes for Rule of Evidence 803(15) indicate that this hearsay exception applies to uncontroversial facts in dispositive documents that establish an interest in property, such as deeds, trusts, wills, covenants, or mortgages. *Stahl v. State*, 686 N.E. 2d 89, 93 (Ind. 1997). For instance, the notes give an example of a "deed purporting to have been executed by an attorney in fact may recite the existence of the power of attorney," or a "deed may recite that the grantors are all the heirs of the last record owner." Fed. R. Evid. 803(15) advisory committee's note.

Dispositive documents that qualify under Rule 803(15)'s hearsay exception typically arise from well-planned transactions that ensure authenticity, germaneness, trustworthiness, and reliability. Because dealings that establish interest in property are thoughtfully planned

---

[4] Although the decisions of these courts are not binding on this court, they can provide persuasive authority and guidance.

transactions, they provide "assurance that they are negotiated documents where at least one party, usually the purchaser, is strongly motivated to see that they are accurate." *Stahl*, 686 N.E. 2d at 93. In other words, parties are heavily incentivized to present facts that are germane to the purpose of the document. *Id.* Dispositive documents are also trustworthy since "statements recited in the document[s] are likely to be reliable because the instrument[s] [are] carefully drawn and [were] not created for purposes of the current controversy." *Id.*

While documents must be authentic, germane, and trustworthy to the document's purpose, courts have also measured the document's reliability by examining the circumstances under which a document is created. *Id.* "A piece of evidence that may be argued to fit within the specific language of the rule may nonetheless be inadmissible hearsay because of its inherent unreliability." *Id.* Indeed, "[r]eliability is an implicit requirement of Rule 803(15)." *Id.* For example, a Michigan court found that handwritten documents that were neither filed nor signed by a party to the transaction were unreliable to fall under Rule 803(15)'s hearsay exception. *Botsford Gen. Hosp. v. Citizens Ins. Co.*, 489 N.W. 2d 137, 142-43 (Mich. Ct. App. 1992).

We hold the trial court properly excluded the document because it neither establishes nor affects an interest in property and lacks the trustworthiness required by Rule 2:803(15). The document merely indicates an agreement for Hong to stay at the residence. It does not give her any ownership or renter interest in the property.[5] The document clearly was created for the

---

[5] The dissent is mistaken about Rule 2:803(15)'s hearsay exception for documents that establish or affect an interest in property. The dissent argues that Hong's interest was affected because she could not remain on the premises, and Philip's was affected because he could not exclude her. This reasoning, however, overlooks precedent applying the exception only where the document establishes or affects ownership interests in property, not mere possessory disputes. *See United States v. Weinstock*, 863 F. Supp. 1529, 1535 (D. Utah 1994) (admitting an affidavit claiming ownership of 35,000 shares under Rule 803(15) to show defendant who allegedly forged endorsement never held ownership interest the certificate). *See also Compton v. Davis Oil Co.*, 607 F. Supp. 1221, 1229 (D. Wyo. 1985) (admitting a statement in public property related records to support property ownership to solve title dispute).

"purposes of the current controversy." *Stahl*, 686 N.E. 2d at 93. In fact, it appears to have been drafted close to the eve of the initiation of the proceedings in the district court. As the Indiana Supreme Court stated, the more recent a non-dispositive document is created, "the more carefully the document's reliability must be examined." *Id.* at 94. Unlike dispositive documents, which are older and unrelated to the current litigation, Hong's document is recent and was made "in conjunction with the very transaction giving rise to the lawsuit in which it is offered." *Id.*

Additionally, Philip was unaware of the alleged agreement between Hong and their sister. It is likely that when Philip confronted Hong about vacating the property, she would have informed him about any agreement between her and Geraud. At some point during the controversy, Philip would have also likely been told by Geraud. Accordingly, because the document neither affects an interest in property nor bears sufficient guarantees of trustworthiness or reliability, the trial court did not abuse its discretion in excluding it.

## II. Philip's Right to File Unlawful Detainer Without Co-tenants' Permission

Hong argues that she had a right to remain until December 31, 2024, because her sister, Geraud, a co-tenant, gave her permission.[6] She believes that, as a co-tenant with equal property rights, Geraud has equal property rights to Philip, and therefore, her continued residence cannot be overridden by Philip's decision to evict her. Instead, Hong argues that Philip must get permission from the other co-tenants to evict her. Hong thus contends that Philip lacks standing to bring an unlawful detainer action because he did not have the consent of his other co-tenants to evict her.

However, this argument is contrary to Virginia law. Philip's right to bring an unlawful detainer action under Code § 55.1-1253(C) does not depend on the consent of his co-tenants.

---

[6] Of course, given the correct ruling of the trial court on the inadmissibility of the purported agreement of Geraud, Hong is not able to prove this permission.

Virginia law states that an "[u]nlawful detainer is an action against a defendant who lawfully entered into possession of real property but whose right to lawful possession has since expired." *Parrish v. Fannie Mae*, 292 Va. 44, 50 (2016). "It is brought by a plaintiff lawfully entitled to possession at the time of suit, which the defendant is then unlawfully withholding." *Id.*

Hong's argument that the dispute involves the property interest between Geraud and Philip is incorrect. Instead, "[t]he sole issue to be determined by a court in an unlawful detainer action is whether the plaintiff, who is presently out of possession, has a superior right of possession to the defendant." *Neal v. Sec'y of the Dep't of Veterans Affairs*, 79 Va. App. 1, 6 (2023). Therefore, in this case, the dispute is between Philip's property rights and Hong's possession.[7]

Historically, Virginia law has recognized the authority of property owners in tenancy in common to bring proceedings for possession without the need to join co-tenants.[8] As early as 1826, the Virginia Supreme Court recognized that a property owner may bring an unlawful detainer action against all persons without consent from his co-owners, "other[] than his companions, a joint-tenant, *tenant in common*, or coparcener." *Allen v. Gibson*, 25 Va. (4 Rand.)

---

[7] The dissent fails to acknowledge the expired oral rental agreement between Philip and Hong that required her to pay $400 per month. Under the Virginia Residential Landlord-Tenant Act's default rules for oral lease agreements, Hong was required to make monthly payments for one year. *See* Code § 55.1-1204(C)(2)-(3). However, after failing to make payments, the expiration of her lease, and Philip's desire to evict her, Hong became a tenant at sufferance. As a result, Hong was not an authorized occupant. Instead, Philip could bring an unlawful detainer action against her. *See* Code § 55.1-1253(C) ("If the tenant remains in possession without the landlord's consent after expiration of the term of the rental agreement or its termination, the landlord may bring an action for possession.").

[8] In her brief, Hong cites two out-of-state cases because she contends there is no Virginia authority addressing whether a co-tenant may evict non-co-tenants from jointly owned property. However, long-standing Virginia precedent recognize that a co-tenant may evict non-co-tenants without obtaining permission from other co-tenants.

468, 477 (1826) (emphasis added).[9]  Given this legal principle, Philip may lawfully file an unlawful detainer against Hong without the consent of his co-tenants.[10]  His co-tenant's permission to Hong did not diminish his right to recover possession.  Accordingly, Philip had standing to bring the unlawful detainer action, and the trial court properly granted him possession.

CONCLUSION

For these reasons, we affirm the circuit court's judgment granting Philip Ha possession of the property.

*Affirmed.*

---

[9] The dissent argues that *Allen* did not address whether a non-joined co-tenant's objection can prohibit the eviction of a non-cotenant.  That distinction is irrelevant because the Virginia Supreme Court expressly held in *Allen* that a co-tenant may evict non-cotenants without obtaining consent from other co-tenants.  Additionally, if, as the dissent concedes, *Allen* permits a property owner to bring unlawful detainer without joining co-owners, it logically follows that the owner likewise does not need to secure permission to evict.  Secondary authority also recognizes the same inference from *Allen*.  *See* 5A M.J. Cotenancy § 48 (2025) ("One joint tenant or tenant in common may, in an action of unlawful detainer, recover the possession of the whole land, without joining his cotenant in the action.").

[10] Regardless of the dissent's disagreement, we must follow Supreme Court precedent because "we are bound by decisions of the Supreme Court of Virginia and are without authority to overrule" it.  *Roane v. Roane*, 12 Va. App. 989, 993 (1991).

Causey, J., dissenting.

There are no superior rights between joint owners of property. This has been a well settled principle for centuries. Here, Philip and Geraud are joint owners. Consequently, Philip has no superior right to Geraud. Hong's permission to reside on the premises was jointly given by both Philip and Geraud and continued uninterrupted for over ten years. I would hold that Hong cannot be evicted solely by Philip. For that reason, I respectfully dissent.

I. Virginia courts have yet to consider whether a joint owner my lawfully evict an authorized occupant when another joint owner has granted permission for the occupant to remain.

I would hold that where owners of a residence jointly agree to permit a person to occupy it, that permission cannot be revoked by only one owner of the residence, especially when the other stands by the original agreement. Virginia's courts do not appear to have confronted this specific issue before. However, California's and Maine's courts have reached related conclusions that should be adopted. *See Swartzbaugh v. Sampson*, 54 P.2d 73, 78 (Cal. Ct. App. 1936) ("One tenant in common may, 'by either lease or license, . . . confer upon another person the right to occupy and use the property of the co-tenancy as fully as such lessor or licensor himself might have used or occupied it if such lease or license had not been granted. *If either co-tenant expel such licensee or lessee, he is guilty of a trespass*.'" (alteration in original) (emphasis added) (quoting *Lee Chuck v. Quan Wo Chong & Co.*, 28 P. 45, 46 (Cal. 1891))); *Kapler v. Kapler*, 755 A.2d 502, 508-09 (Me. 2000) (holding that a person permitted to enter property by one joint owner is not a trespasser).

The Virginia case law cited by the majority is distinguishable. True, the *Allen* Court stated that a co-owner need not be *joined* in another co-owner's unlawful detainer action. *Allen v. Gibson*, 25 Va. (4 Rand.) 468, 471, 477 (1826) ("The material questions in the case [include] . . . whether the surviving mortgagee can recover [via unlawful detainer] in his own name, without joining the heirs of the deceased mortgagee as a party in the proceeding?"). But

"nonjoinder" is a procedural issue, separate from the substantive question of the evidentiary import of one co-tenant's objection to another's ability to evict. *See* W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 5.03[1] (5th ed. 2017) (discussing nonjoinder). In the *Allen* opinion, there is no suggestion that the non-joined co-owners (fellow tenants in common, in that case) objected to the unlawful detainer. *See Allen*, 25 Va. (4 Rand.) at 477. If the defendant there had presented such evidence, the *Allen* court's holding regarding the necessity of them as parties would not have sufficed to decide the issue.[11]

Further, the *Allen* Court's ultimate holding was expressly limited to the rights of one co-owner as against "any person having *no right whatever.*" *Id.* (emphasis added). The situation is markedly different when an authorized occupant (as defined *infra*) presents evidence that she was granted a right to stay.

In this case, the record shows that Hong was first permitted to occupy the premises in 2010, when she was caring for her mother.[12] Hong's siblings Philip and Geraud then jointly permitted Hong to reside there for more than ten years before Philip unilaterally sought her eviction. Evidently, Philip now disagrees with the parties' original arrangement. But as

---

[11] The majority quotes *Allen*'s statement that, "[a]s against all others than his companions, a joint-tenant, tenant in common, or coparcener, is entitled to the possession of the whole." 25 Va. (4 Rand.) at 477. Contrary to the majority's suggestion, this quote has no bearing on the issue of the nonconsent of a co-owner. It is a statement regarding the relative priority of property rights, and a nonconsenting co-owner presents an issue of conflicting, equally valid property rights.

Additionally, this quotation does not mean that anyone other than a joint-tenant, tenant in common, or coparcener can be evicted no matter what. How could it, as it does not even include a compliant lessee on a valid lease? Such a person cannot be evicted. Similarly, an authorized occupant, discussed *infra*, cannot be evicted while that authorization is valid.

Additionally, concerning to the majority's comment about Virginia Supreme Court cases being binding precedent: precedent is binding only when it is on point. *See Gaskill v. Commonwealth*, 185 Va. 440, 446 (1946) ("A question of law not brought to the attention of the court or passed upon by it cannot be considered as decided in a subsequent case involving the same question.").

[12] The property was jointly transferred to Philip, Tu, and Geraud in 2010.

discussed above, permitting this unilateral action to stand is inconsistent with the equal ownership rights of Philip's sister Geraud. Additionally, to the extent to which there is any ambiguity in the law, permitting such a unilateral eviction is not an outcome that is to be favored, given Geraud's interest in the residence and stable housing. *See Lake of Woods Ass'n v. McHugh*, 238 Va. 1, 7 (1989) (recognizing a policy of "favoring certainty and stability" in property rights); *Kapler*, 755 A.2d at 508. For these reasons, I would hold that Hong's jointly given permission to reside there could only be jointly—not unilaterally—taken away. I would reverse the trial court's decision to grant judgment for Philip against the consent of Geraud and would remand this case for further proceedings.[13]

## II. The trial court erred by excluding Hong's notarized letter.

The trial court erred by excluding Hong's letter as hearsay because, under Virginia law, the letter rendered Hong an authorized occupant. As such, the letter should have been subject to the hearsay exception delineated under Rule 2:803(15) of Virginia's Rules of Evidence.

An authorized occupant is defined under the Virginia Residential Landlord and Tenant Act (VRLTA) as a person having the legal right to occupy a residence but lacking a tenant's obligation to pay rent. *See* Code § 55.1-1200 ("'Authorized occupant' means a person entitled to occupy a dwelling unit with the consent of the landlord, but who has not signed the rental agreement and therefore does not have the financial obligations as a tenant under the rental

---

[13] The majority also quotes *Neal v. Sec'y of the Dep't of Veterans Affs.*, 79 Va. App. 1, 6 (2023), for the proposition that "[t]he *sole issue* to be determined by a court in an unlawful detainer action is whether the plaintiff, who is presently out of possession, has a superior right of possession to the defendant" (emphasis added). This statement has limits. A landlord cannot evict a nonpaying tenant in many cases, including when the landlord fails to comply with procedural requirements for an unlawful detainer. *See, e.g.*, Code §§ 55.1-1202, -1245. Similarly, I would hold, a joint owner of property who attempts to revoke jointly-given authorized occupancy against the will of a fellow joint owner, alone, cannot prevail in an unlawful detainer suit. Such a joint owner must prove that he represents the will of all joint owners to the property.

agreement."). The letter is a notarized statement from an owner of the premises, stating that she "agree[s] for Ms. Ha . . . to stay" there for a specified period of time. This letter, thus, clearly serves as evidence of Hong's status as an authorized occupant of the premises.[14]

An authorized occupant has an important property right. "[A]uthorization" is defined as "[o]fficial permission to do something; sanction and warrant." *Authorization*, *Black's Law Dictionary* (12th ed. 2024). To "occupy" means "[t]o live or stay in (a place)." *Occupy*, *Black's Law Dictionary*, *supra*. Thus, an authorized occupant has the legal right to live in a place. The notarized letter is evidence of Hong's possession of this property right. For this reason, the letter should have been admitted as a writing that "purport[ed] to establish" Hong's interest as an authorized occupant of the property. Va. R. Evid. 2:803(15).

An authorized occupant also places substantial limitations on a landowner's property rights. "[T]he right to exclude others is generally 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 581 (2017) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984)). An authorized occupant, while that authorization is effective, may not be excluded from the premises. *See* Code § 8.01-124 (permitting an unlawful detainer to be filed only when a defendant is present, following the expiration of a lease, *without the consent* of the landlord). Therefore, the document establishing Hong's status as an authorized occupant also "affect[ed] [the landlords'] interest in real property" by preventing the owners from exercising the full extent

---

[14] The majority argues that Hong was not an authorized occupant because she was merely a tenant at sufferance following the expiration of a lease with Philip. This position assumes that Geraud's rights are irrelevant. Because I would hold, per *Swartzbaugh*, 54 P.2d at 78, and *Kapler*, 755 A.2d at 508-09, that Geraud has equal rights as a co-owner of the premises, regardless of whether the temporary payment arrangement with Philip constituted a lease, Geraud's letter made Hong her authorized occupant and protected her against eviction.

of their ownership rights and should have been admitted on that basis. Va. R. Evid. 2:803(15).

Hong, as an authorized occupant, may not be excluded from the residence.[15]

The majority's narrow construction of Rule 2:803(15) is not compelled by the case law or history of the rule. First, the Indiana case relied on by the majority does not indicate that only "dispositive documents" should be admitted under the federal analogue rule. Instead, it states that the federal advisory committee "anticipated that the exception would *typically* apply to 'ancient' and 'dispositive' documents," but acknowledges that "the Rule has been held to apply to other documents affecting or establishing an interest in property, even if not dispositive in nature." *Stahl v. State*, 686 N.E.2d 89, 93 (Ind. 1997) (emphasis added) (citing *United States v. Weinstock*, 863 F. Supp. 1529, 1529 (D. Utah 1994)). *See also Weinstock*, 863 F. Supp. at 1532-34 (reviewing numerous cases and the origins of the federal Rule 803(15) to conclude that the exception was not intended to apply only to "dispositive documents").[16]

Additionally, no evidence indicates that the document in this case, which was signed and sworn before a notary public of the Commonwealth of Virginia, is inauthentic. *Cf. People v. Burton*, 441 N.W.2d 87, 89-90 (Mich. Ct. App. 1989) (declining to apply Michigan's version of 803(15) in part because the document was not dated, signed or witnessed). The trial court made no finding that the document was created for the purposes of the relevant legal dispute. As the

---

[15] The majority suggests that precedent would limit the applicability of Rule 803(15) to documents establishing ownership interests. Multiple courts, however, have recognized that the rule applies to leases, which establish occupancy and possessory rights. *See People v. Lawrence*, 175 N.E.3d 764, 768, 772 (Ill. App. Ct. 2020) (applying Illinois Rule of Evidence 803(15) to a lease); *Tri-Steel Structures, Inc. v. Baptist Found.*, 166 S.W.3d 443, 450 (Tex. Ct. App. 2005) (rule 803(15) applies to "deeds, leases, mortgages, and other such 'documents affecting an interest in property'" (emphasis added) (quoting *Compton v. WWV Enters.*, 679 S.W.2d 668, 671 (Tex. Ct. App. 1984))).

[16] Of note, while the majority states that the trial court ruled that "only dispositive documents, such as deeds and trusts, fall under" the exception, the circuit court did not state the specific reasons for its holding that the exception did not apply.

document was signed and sworn six days *before* the first termination notice was issued, this Court cannot justifiably reach this factual conclusion itself on appeal.[17]

For the foregoing reasons, Hong's letter qualified as a document creating an interest in real property and as a document affecting an interest in real property, and, for those reasons, should have been admitted under Rule 2:803(15). I would also add that admitting this kind of document serves significant practical concerns. There are many potential legitimate reasons why a person may live as an authorized occupant rather than a tenant, whether temporarily or long term. For the sake of that person's stability, an authorized occupant must be permitted to introduce the written permission of her legal status as an authorized occupant when that status is questioned in court. To require otherwise would predicate an authorized occupant's ability to prove the legality of her right to reside in the residence on the willingness of her landlord to testify.

III. Conclusion

Hong is an authorized occupant of the residence. Philip does not have superior rights to evict Hong. Therefore, for all the reasons stated above, I would reverse the judgment of the trial court.

---

[17] This Court also cannot conclude that the document is likely inauthentic from Philip's testimony that he was unaware of the document. This case hinges on a debate over Hong's authority to reside at the jointly owned premises. To exclude Hong's evidence of her permission to reside there simply because Philip denied knowledge of the document would be to insert a ruling on the merits into a question of evidentiary admissibility.